UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SRH HOLDINGS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY and GEICO INSURANCE AGENCY, INC.,<br><br>        Defendants. | Case No. 23-cv-10325-DJC |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                             **July 24, 2023**

**I.   Introduction**

Plaintiff SRH Holdings, LLC ("SRH Holdings") filed this lawsuit against Defendants Government Employees Insurance Company ("GEICO") and GEICO Insurance Agency, Inc. (collectively, "GEICO") asserting claims for breach of contract (Count I), renewal commissions (Count II), unjust enrichment (III), breach of the implied covenant of good faith and fair dealing (Count IV), misrepresentation (Count V), misclassification in violation of Mass. Gen. L. c. 149, § 148B (Count VI), and declaratory judgment (Count VII).  D. 25 (second amended complaint). GEICO now has moved to stay or dismiss Count VI under the first-to-file doctrine and to dismiss all other claims in the second amended complaint for failure to state a claim.  D. 30.  For the following reasons, the Court ALLOWS the motion in part and DENIES it in part.

## II. Standard of Review

### A. Motion to Stay or Dismiss Under the First-to-File Rule

"Under what has become known as the first-to-file rule, where the overlap between two suits is 'nearly complete[,]' the usual practice is for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action." Thakkar v. United States, 389 F. Supp. 3d 160, 170 (D. Mass. 2019) (alteration in original) (quoting TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996)). Federal courts have expressed preference for stays over dismissals "to preserve any claims that might not be resolved by the parallel proceedings." Id. at 171 (citation and internal quotation marks omitted). The rule should not be applied in a "mechanical way" and "courts have 'discretion to give preference to a later-filed action when the action will better serve the interests involved.'" Id. at 170 (quoting ECM Corp. v. Parallel Iron, LLC, 914 F. Supp. 2d 125, 127 (D. Mass. 2012)). "In addition to determining which suit was filed first, courts will examine the similarity of the parties involved and the similarity of the issues in deciding whether the first-to-file rule should apply." Id. at 170–71 (quoting ECM, 914 F. Supp. 2d at 127). "The party moving for the stay bears the burden of proving that a stay is appropriate." Id. at 171 (citing Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)).

### B. Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted). First,

the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted). Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### III. Factual Background

The following facts are drawn from the second amended complaint, D. 25, and are accepted as true for the purpose of resolving the pending motion to dismiss.

On or about May 13, 2020, SRH Holdings and GEICO entered into the GEICO Field Representative Agreement, id. ¶ 9; see id. at 22, which was superseded by a later agreement, dated December 11, 2020 ("the GFR Agreement").[1] D. 12-1 at 25. Richard Hurwitz ("Hurwitz") formed SRH Holdings "solely for the purpose of selling insurance on behalf of [GEICO]." Id. ¶ 8. The sale of insurance products is "the primary aspect" of GEICO's regular business. Id. ¶ 23. GEICO employs "hundreds of captive insurance agents" like SRH Holdings to exclusively sell its insurance products. Id. ¶¶ 13–14. GEICO paid SRH Holdings "solely in the form of

---

[1] The copy of the GFR Agreement attached to the second amended complaint is undated and not executed by either party. See D. 25 at 80. The Court previously considered, in ruling on SRH Holdings' motion for injunctive relief, the signed GFR Agreement, dated December 11, 2020, which was attached to GEICO's opposition to that motion. D. 12-1 at 25. Hurwitz, of SRH Holdings, signed this GFR Agreement, which by its terms superseded the May 13, 2020 agreement. Id. at 31–32. Given that the GFR Agreement is central to several of SRH Holdings' claims and the authenticity of the document is not in dispute, the Court takes judicial notice of the December 11, 2020 GFR Agreement, D. 12-1 at 25, as the operative agreement. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993).

commissions." Id. ¶ 22. GEICO is "the source for many of the instrumentalities and tools used by SRH [Holdings] and other captive insurance agents." Id. ¶ 16. For example, GEICO "control[led] and own[ed] the lists of SRH [Holdings'] potential customers . . . the telephones, telephone numbers and computer operating systems used by SRH [Holdings] and its office staff . . . all of [its] marketing materials, including logos and signs" and "telephone scripts." Id.

SRH Holdings began business operations on September 29, 2020. Id. ¶ 31. From its inception, SRH Holdings allegedly was "an above average performer" that "built up its client bases in a very short period of time growing to be the number one in Massachusetts and number seven in the entire country." Id. ¶ 33. On December 29, 2022, GEICO notified SRH Holdings that it was investigating its business. Id. ¶ 56. GEICO then allegedly suspended SRH Holdings' business, locked it out of all of GEICO's systems, re-routed all its customer calls and denied SRH Holdings the ability to interact with new and existing customers. Id. ¶ 57. On or about January 12, 2023, GEICO notified SRH Holdings that it was terminating the GFR Agreement, effective February 12, 2023. Id. ¶ 59; see id. at 106.

Approximately ten days later, SRH Holdings learned that it could remain open for business until February 12, 2023, but GEICO allegedly "failed to restore [SRH Holdings'] systems back to pre-December 29, 2022 form." Id. ¶ 60. Specifically, GEICO, *inter alia*, shut down and wiped clean all of SRH Holdings' computer systems and "share drives," shut down all of its log-in information and passwords, denied it access to GEICO's "[a]uto pay" system, re-routed its calls to other GEICO offices, sent customers to other offices, falsely informed them that SRH Holdings was closed for business and "purposefully destroyed documents and information" relating to SRH Holdings' business. Id. GEICO allegedly closed other successful GFR offices so as not pay its captive agents "current and future commissions that they would be entitled to in the normal

4

course." Id. ¶ 61. GEICO also allegedly "failed to make significant payments to SRH [Holdings] for insurance policies" it wrote but which it has failed to receive any credit. Id. ¶ 63.

## IV. Procedural History

SRH Holdings filed this lawsuit in Norfolk Superior Court. D. 1-1. GEICO removed the case to this Court. D. 1. SRH Holdings moved for injunctive relief, D. 5, and filed an amended complaint. D. 11. The Court heard the parties regarding such injunctive relief, D. 21, and denied the motion, D. 23. SRH Holdings filed a second amended complaint. D. 25. GEICO now has moved to stay or dismiss Count VI of the second amended complaint under the first-to-file doctrine and to dismiss all other claims for failure to state a claim. D. 30. Having considered GEICO's memorandum in support of its motion, D. 31, SRH Holdings' opposition, D. 36, and GEICO's reply, D. 40, the Court rules on the motion for the reasons stated below.[2]

## V. Discussion

### A. Whether to Stay or Dismiss Misclassification Claim Under First-to-File Rule (Count VI)

SRH Holdings alleges that GEICO improperly classified it as an independent contractor and it seeks lost wages under Mass. Gen L. c. 149, § 148B. D. 25 ¶ 102. GEICO argues that this misclassification claim "should be dismissed, or stayed in the alternative, under the first-to-file rule" because a putative class action, Moyer v. Government Employees Insurance Company, et al., No. 23-cv-00578-MHW-EPD, was filed first on February 9, 2023 in the Southern District of Ohio (the "Ohio action"). D. 31 at 5, 7; see D. 31-2. In the Ohio action, the plaintiff alleged that GEICO misclassified its captive agents "as independent contractors," thereby failing to provide "the same retirement, health, and other benefits they provide to other employees through several

---

[2] To the extent that GEICO sought oral argument on its motion, D. 30 at 2, the Court denies that request as moot in light of its ruling on the papers here.

5

employee benefit pension and welfare plans established under [the Employment Retirement Income Security Act (ERISA)]." D. 31-2 ¶ 6.  Moyer seeks declaratory judgment under ERISA, injunctive relief, benefits under ERISA and unjust enrichment.  Id. ¶¶ 68-101.  SRH Holdings argues that the Court should not apply the first-to-file rule to stay or dismiss this action because SRH Holdings is not a party, nor in privity with a party, in the Ohio action and because its Massachusetts wage claim is dissimilar from the ERISA claims in the Ohio action.  D. 36 at 8.

Given that there is no dispute that the Ohio action was filed first, the Court turns to the other two factors of the first-to-file doctrine, the similarity of the parties and the similarity of the issues.

> 1. *Similarity of the Parties*

Although SRH Holdings argues that "the first-to-file doctrine appears to require complete identity of the parties," id., courts in this district have ruled that the first-to-file doctrine "does not require strict identity of the parties, but rather substantial similarity." Thakkar, 389 F. Supp. 3d at 172 (citation and internal quotation marks omitted); Waithaka v. Amazon.com, Inc., 404 F. Supp. 3d 335, 351 (D. Mass. 2019) (noting that "[t]he first-to-file rule only requires similar parties, not identical ones").  Moreover, "when a suit is related to a class action . . . courts will compare the allegations in the plaintiff's complaint with the class definition to determine whether the plaintiff meets the class definition's requirements.  If so, the parties will be sufficiently similar under the first-to-file rule." Thakkar, 389 F. Supp. 3d at 172 (citation omitted).

Here, the class definition in the Ohio action applies to SRH Holdings.  The Ohio action defines the putative class as "captive insurance agents who sell and have sold insurance products for or on behalf of [GEICO]." D. 31-2 ¶ 53.  The second amended complaint here similarly alleges that SRH Holdings was a "captive insurance agent" that sold insurance on behalf of GEICO.  D.

25 ¶¶ 8, 14.  Accordingly, the parties in the Ohio action and this action are sufficiently similar for the purposes of the first-to-file rule.

### 2. *Similarity of the Issues*

"[T]o determine if issues are substantially similar, courts compare the relief sought in plaintiff's complaint and the relief sought in the class action." Thakkar, 389 F. Supp. 3d at 173–74.  "Courts also examine whether the plaintiff's case and the class action turn on similar determinations of fact and seek to resolve similar legal issues." Id. at 174.  Here, although both actions involve claims that GEICO misclassified captive agents as independent contractors, it cannot be said that they seek the same relief.  The plaintiff in the Ohio action seeks retirement, health and other benefits under ERISA, declaratory and injunctive relief and unjust enrichment.  D. 31-2 ¶¶ 69, 74, 88, 94.  On the other hand, SRH Holdings seeks contract claims relating to the GFR Agreement (Counts I, II, IV), declaratory judgment regarding the GFR Agreement (Count VII), unjust enrichment as an alternative to same (Count III), misrepresentation (Count V) and lost wages under Mass. Gen L. c. 149, § 148B (Count VI).  D. 25 ¶ 105.

To the extent that there is any factual or legal overlap, it would be between the legal determination that must be made as to the ERISA claims in the OH class action and the misclassification claim for lost wages in this case.  Under ERISA, only employees are eligible for benefits, and courts, applying the "common law test" to determine whether an individual is an employee or independent contractor, consider "the hiring party's right to control the manner and means by which the product is accomplished. . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment;

the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Dykes v. DePuy, Inc., 140 F.3d 31, 37–38 (1st Cir. 1998) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323–24 (1992)).  On the other hand, under Mass. Gen L. c. 149, § 148B, an individual performing a service is considered an employee if he is "free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact," if "the service is performed outside the usual course of the business of the employer" and if "the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

The Court disagrees with GEICO that ERISA's common law test is "virtually identical to the factors at issue" in SRH Holdings' claim under Mass. Gen L. c. 149, § 148B.  D. 31 at 10. ERISA's common law test involves several more specific and distinguishable factors, including the skill required, the source of the instrumentalities and tools, the duration of the relationship between the parties, the method of payment, the hired party's role in hiring and paying assistants, the provision of employee benefits and the tax treatment of the hired party.  Dykes, 140 F.3d at 37–38 (quoting Darden, 503 U.S. at 323–24).  While it can be argued that some of these factors may be considered in the context of the more broadly formulated test under Mass. Gen L. c. 149, § 148B, the tests are sufficiently different that the outcome of a case applying one test would not necessarily determine the outcome of a case applying the other test.  This is particularly true here where the relief sought in the two actions is distinct—ERISA benefits in the Ohio action and contract remedies and wages here.

Accordingly, the Court declines to apply the first-to-file rule and denies GEICO's motion to stay or dismiss Count VI.

### B. Breach of Contract (Count I)

SRH Holdings alleges that Defendants wrongfully terminated the GFR Agreement and breached the GFR Agreement by suspending its business for fifteen days pending an investigation. D. 25 ¶¶ 71–76. GEICO argues that "[n]either theory survives under the plain language of the operative contract." D. 31 at 14. Although the Court ruled under the higher standard that applied to SRH Holdings' motion for injunctive relief that it was not likely to succeed on this claim, D. 23, the Court cannot conclude that SRH Holdings has failed to meet the lower standard of stating a plausible breach of contract claim, particularly where there are disputed facts bearing on same at least as to the wrongful suspension of its business.

#### 1. Wrongful Termination of the GFR Agreement

To prevail in a breach of contract action under Maryland law, which governs the operative GFR Agreement, D. 12-1 at 31, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 365 Md. 166, 175 (2001). Here, Section IV(A) of the GFR Agreement provided that it could be terminated "by either GEICO or [SRH Holdings] on 30 days prior written notice." D. 12-1 at 30. It is uncontroverted that GEICO provided such notice in a letter dated January 12, 2023. D. 25 ¶ 59; see id. at 106. Accordingly, SRH Holdings fails to state a breach of contract claim on the basis that GEICO wrongfully terminated the GFR Agreement.

#### 2. Wrongful Suspension of Business

SRH Holdings also alleges that GEICO breached the GFR Agreement by suspending SRH Holdings' access to its computer and phone systems prematurely during the thirty-day notice

9

period. D. 25 ¶ 60. As a preliminary matter, the GFR Agreement does not expressly entitle SRH Holdings to access GEICO systems during the notice period. Moreover, Section II(D) provided that "any violation of any of [SRH Holdings'] responsibilities with regard to [Section II(D)] is alone sufficient for and may, at GEICO's sole discretion . . . result in the suspension or revocation of [SRH Holdings'] access to GEICO's systems or termination of this Agreement." D. 12-1 at 29. Under Section II(D), SRH Holdings and its employees were obligated to "only use the password, User ID, or other 'log-on' authorization individually assigned to them when accessing GEICO systems" and were prohibited from "permit[ting] any other individual to use the same." Id. SRH Holdings alleges that GEICO suspended SRH Holdings' systems pending an investigation into its business. Id. ¶¶ 56–57. Although GEICO reserved the unilateral right to suspend SRH Holdings' access to its systems if it determined that SRH Holdings violated Section II(D), there is at least a factual dispute as to whether GEICO did or did not in fact make such a determination. See D. 23 (noting that "there is a factual dispute between the parties about the extent and length of that suspension"). Reading the complaint in the light most favorable to SRH Holdings, it is plausible that GEICO's allegedly premature suspension of SRH Holdings' computer and phone systems breached the GFR Agreement.

Accordingly, the Court denies the motion to dismiss Count I for failure to state a claim for relief on the wrongful suspension of business ground.

### C.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)

SRH Holdings alleges that GEICO breached the implied covenant of good faith and fair dealing. D. 25 ¶¶ 90–93. There is, however, "no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing." Mount Vernon Properties, LLC v. Branch Banking And Tr. Co., 170 Md. App. 457, 471–472 (2006) (noting that "[a] breach of

the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, e.g., breach of contract, than as a stand-alone cause of action for money damages"). Accordingly, the Court dismisses Count IV, particularly in light of Count I, the breach of contract claim.

   D. **Renewal Commissions (Count II)**

SRH Holdings alleges that GEICO "unilaterally inserted a provision denying [SRH Holdings] from any payments or renewals or service commissions based upon renewals which occur subsequent to the termination date of the GFR Agreement." D. 25 ¶ 78. The operative GFR Agreement, however, does not contain such a provision, see D. 12-1 at 25–32, which SRH Holdings acknowledges in its brief as an "obviously mistaken reference to an alleged contract term . . . contained in the unsigned version of the GFR agreement" attached to the second amended complaint. D. 36 at 13. SRH Holdings nevertheless argues that dismissal is inappropriate because the operative GFR Agreement is "ambiguous" with respect to renewal commissions. D. 36 at 14.

As a preliminary matter, the Court rejects GEICO's argument that this claim should be dismissed because the second amended complaint does not allege that the contract is ambiguous. D. 40 at 5–6. Under Maryland law, "[w]hether a contract is ambiguous is a question of law." Davis v. Magee, 140 Md. App. 635, 649 (2001). For the Court's purposes here, it is sufficient that SRH Holdings alleged that it "is entitled to commissions from [GEICO], which commissions [GEICO has] failed and refused to pay since wrongfully terminating [SRH Holdings'] employment and forcing the closure of its office on February 12, 2023." D. 25 ¶ 68.

Turning to the GFR Agreement, it is silent on renewal commissions but contains two provisions that give rise to conflicting interpretations on this issue. Section IV(C) provides that "[u]pon termination of this Agreement, GEICO shall withhold [SRH Holdings'] final commission

check for a period of six (6) months following the termination effective date." D. 12-1 at 30. A plausible interpretation of Section IV(C) is that renewal commissions end upon termination. On the other hand, Section V(D) provides that "[u]pon termination of this Agreement, a party's obligations shall cease except for those remaining or required to be performed following such termination. For the avoidance of doubt, the parties agree that those provisions of this Agreement that logically should survive its termination in order to accomplish its fundamental purposes will do so. All representations, warranties, indemnities and covenants made herein shall survive termination and shall remain enforceable after such termination." Id. at 31. Under a different, plausible interpretation, the payment of renewal commissions are one such "fundamental purpose" that would "logically" survive the contract's termination.

In Sims Agency LLC v. Gov't Emps. Ins. Co., No. 22-cv-00002-HTW-LGI, 2023 WL 2481476, at *8 (S.D. Miss. Mar. 12, 2023), a district court applying Maryland law declined to dismiss a GEICO captive agent's similar claim for renewal commissions because it determined that the agreement at issue, which contained provisions with similar language to Sections IV(C) and V(D) here, was "ambiguous as to the issue of renewal commissions" and would require the court to consider parol or extrinsic evidence. "In trying to determine when renewal commissions end," the court in Sims noted the ambiguity of having "one provision promis[ing] to pay renewal commissions for years; another provision contemplat[ing] 'obligations' that survive termination; [and] another provision discuss[ing] a six (6) month period after which a 'final commission check' is paid." Id. The Court finds Sims to be persuasive. Under the contract here, as in that case, "no provision clearly addresses when and if renewal commissions end upon termination" and, therefore, the GFR Agreement is ambiguous on this point. Id.

For these reasons, the Court denies the motion to dismiss Count II.

### E. <u>Unjust Enrichment (Count III)</u>

SRH Holdings alleges that GEICO will be unjustly enriched to the extent it continues collecting renewal commissions on policies that SRH Holdings sold. D. 25 at 17. While Maryland law applies to the GFR Agreement, D. 12-1 at 31, the parties agree that Massachusetts law applies to SRH Holdings' unjust enrichment claim. See D. 31 at 25; D. 36 at 14–15. Under Massachusetts law, a claim for unjust enrichment requires that a plaintiff show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82 (1st Cir. 2020) (citation and internal quotation marks omitted). GEICO argues that this claim should be dismissed because "the parties' relationship is governed by a written contract"—namely, the GFR Agreement. D. 31 at 27. SRH Holdings, on the other hand, argues that it is allowed to plead alternative claims pursuant to Rule 8(d)(2). D. 36 at 14–15.

It is "not uncommon for an unjust enrichment claim to proceed, in the alternative, with a breach of contract claim beyond the motion to dismiss stage," Duncan v. Nissan N. Am., Inc., 305 F. Supp. 3d 311, 323 (D. Mass. 2018) (citing Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012)), in cases "where there is a dispute over the existence, scope, or enforceability of the putative contract," Alantra LLC v. Apex Indus. Techs. LLC, No. 20-10852-FDS, 2022 WL 11218101, at *8 (D. Mass. Oct. 19, 2022) (citation and internal quotation marks omitted). As discussed above, here, such a dispute over the scope of the GFR Agreement exists with respect to renewal commissions.

Accordingly, the Court denies the motion to dismiss Count III.

13

F.     **Misrepresentation (Count V)**

"To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) (quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). "[M]isrepresentation is considered a species of fraud," Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004), and when alleging fraud, a pleading party "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b).  This requires that the pleading "specify the statements that the plaintiff contends were fraudulent" and explain why they were fraudulent, Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127–28 (1st Cir. 1994)), and otherwise "allege with particularity the who, what, when, where, and how of the fraud," D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st Cir. 2016).

Here, the second amended complaint falls short of this heightened pleading standard.  SRH Holdings alleges that GEICO misrepresented that it would provide SRH Holdings with "the necessary tools to succeed," that it would "abide by the terms and conditions set forth in the GFR Agreement; provide the necessary guidance and training; and operate in a professional manner." D. 25 ¶¶ 95–96.  SRH Holdings further alleges that GEICO made these misrepresentations "to induce SRH [Holdings] to become a GFR."  Id. ¶ 97.  These allegations fail to "specify the statements that [it] contends were fraudulent" or "explain why the statements were fraudulent." Suna, 107 F.3d at 68 (citation and internal quotation marks omitted).  SRH Holdings has specified

neither the time, the speaker, or the location of same. In light of the heightened pleading standard of Rule 9(b), SRH Holdings has failed to plausibly allege a misrepresentation claim.

Accordingly, the Court dismisses Count V for failure to state a claim.

### G.     Declaratory Judgment (Count VII)

SRH Holdings seeks a declaratory judgment that Paragraph IV(D) of the GFR Agreement is an invalid post-employment non-competition restriction under the Massachusetts Noncompetition Agreement Act (the "MNAA"), Mass Gen. L. c. 149, § 24L.  D. 25 ¶ 110; D. 36 at 17–19.  GEICO argues that this claim fails as a matter of law because "Section IV(D) of the GFR Agreement contains a non-solicitation restriction (not a noncompetition restriction)."  D. 31 at 17.

The MNAA defines a "[n]oncompetition agreement" as "an agreement between an employer and an employee, or otherwise arising out of an existing or anticipated employment relationship, under which the employee or expected employee agrees that he or she will not engage in certain specified activities competitive with his or her employer after the employment relationship has ended."[3]  Mass Gen. L. c. 149, § 24L(a).  This definition does not include "covenants not to solicit or hire employees of the employer" or "covenants not to solicit or transact business with customers, clients, or vendors of the employer."  Id.; Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC, No. 21-cv-11930-MPK, 2022 WL 1003963, at *7 (D. Mass. Apr. 4, 2022).

---

[3] Although the parties dispute whether GEICO has properly classified SRH Holdings as an independent contractor under Mass. Gen L. c. 149 §, 148B, the statutory definition of the term "employee" under Mass. Gen. L. c. 149, § 24L(a) "include[s] independent contractors under section 148B."

Here, Paragraph IV(D) provides that "[f]or a period of one year following termination of this Agreement, [SRH Holdings] shall not directly or indirectly, or through any other person or agency, induce or advise anyone who is a GEICO policyholder as of the termination date, to lapse, surrender or cancel any GEICO policy, or solicit any such policyholder to purchase insurance coverage competitive with the insurance coverages sold by GEICO." D. 12-1 at 30–31. The Court agrees with GEICO that this provision is a non-solicitation agreement that cannot reasonably be interpreted as a noncompetition agreement under the MNAA. This provision falls within the carved-out exception for non-solicitation agreements under Mass Gen. L. c. 149, § 24L(a).

Accordingly, the Court dismisses Count VII for failure to state a claim.

**VI.   Conclusion**

For the foregoing reasons, the Court ALLOWS GEICO's motion to dismiss Counts IV (breach of the implied covenant of good faith and fair dealing), V (misrepresentation) and VII (declaratory judgment), DENIES the motion as to Counts I (breach of contract), II (renewal commissions) and III (unjust enrichment) and DENIES the motion to stay or dismiss Count VI (misclassification).  D. 30.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge